Case number 21-7046, Luis R. Martinez, appellant versus Constellis, Triple Canopy. Ms. Farr for the appellant, Ms. Carnell for the appellate. Good morning, Ms. Farr. Good morning. You may proceed. Okay, thank you. Good morning. Thank you for your time today. My name is Kristen Farr and I represent the plaintiff appellant, Luis Martinez. Today, we ask this panel to reverse the decision made by the district court and find that the plaintiff has sufficiently pled claims for a hostile work environment and false imprisonment. When looking at the totality of the circumstances, Mr. Martinez states a claim for a hostile work environment. The harassment he experienced was due to his protected classes. He checks off both the severe and pervasive requirements of a hostile work environment claim. The comments regarding his beard were pervasive. His supervisor, Mr. Williams, gave Mr. Martinez a hard time about his beard for approximately five years, two of which were while he was employed by the defendant. You don't, counsel, describe with any particularity any harassment beyond the three, I believe it was either two or three, instances of comments related to the beard, correct? I mean, you sort of summarize that he was weakly questioned about it, but we don't have a sense from the complaint of the extent of those comments. Well, those are the examples that he experienced, that his supervisor, Mr. Williams, approached him and made comments like that on a regular basis. I understand, but in our circuit, you have to have allegations that actually, if true, would substantiate the claim. And sort of generic one or two examples, not with particular detail, is typically held not to be sufficient to state a claim for the kind of hostile work environment that you appear to be alleging here. Well, if that is all that occurred, that would be true, but these happened for years. Small offhanded comments, one, two, three, certainly aren't going to rise to the level of a hostile work environment, but this was going on for years, that he would make comments, compare them to other employees, talk about the length of his beard that he had as a reasonable accommodation. So it's the cumulative effect of these slight comments that add up into a hostile work environment claim. What term, condition, or privilege of employment was affected by the hostile environment? Well, he was in a very stressful environment having to worry about his supervisor always commenting on his beard that he had due to his disability. So he is always on edge whenever his supervisor comes around him. He doesn't have the ability to just do his job as other employees without a disability have to constantly be on edge and worried about more comments and harassment from his supervisor. I don't see that statement in the complaint. Aren't we at a motion to dismiss stage in evaluating the allegations of the complaint? Yes, I mean, that is the stage that we are at. I mean, I believe that the inferences that can be drawn from the allegations in the complaint lead to that conclusion. Is your hostile work environment claim also related to the facts concerning the unlawful detention, or are those two separate? No, absolutely, those are together. And that is one of the problems with the district court's decision is it's the comments in combination with the unlawful detention that create the totality of his claim for a hostile work environment. And the district court essentially analyzed those separately, and it's the comments that give rise to the motive there, the reason that he's engaging in this behavior. And then Mr. Martinez, along with one other employee with a beard, were the ones that were not so randomly selected for this drug test in a really peculiar and outrageous manner. It was just conducted contrary to policy in a way that would embarrass him in front of colleagues as he is disarmed, taken through the facility by an armed security officer, which gives the impression that he has committed some egregious act. And then he's taken on a wild ride through Washington, D.C., downtown Washington, D.C., without being told where he is going. So it's a combination of those together that on one hand, you have the pervasive comments, on the other side, you have the severe unjustified drug test in that manner that create the hostile work environment claim. And you also allege a common law false imprisonment claim. Are you maintaining that there was a threat of force with respect to the urinalysis random testing? Yeah, I mean, I think this case is distinguishable from the Faneuil case. Stripping of a weapon is a nonverbal threat. It is part of his identity as a security guard. It's important to understand the environment in which Mr. Martinez worked. This is environment that devalues chain of command and strict compliance. Ms. Faneuil had a fear of losing her job, but Mr. Martinez not only had that fear of losing his job, but potentially his career, because losing your job for being terminated for cause, for being terminated for insubordination can affect his potential employment elsewhere, his security clearance. And in that way, his situation is vastly different from Ms. Faneuil, who was a key punch operator at AT&T. So, there's a distinction there with the manner in which he was taken into the car. He did not know where he was going, whereas Ms. Faneuil was aware of where she was being taken and why she was being taken there. And she consented to the trip. She did not consent specifically to picking up the security officer. And it's at that point where the court notes that she did not object or manifest a desire to change her prior consent. However, in this case, Mr. Martinez did not give that original consent. He was stripped of his weapons and escorted out by an armed security guard. But I guess I'm curious about your view of whether there was a threat of force. I mean, it seems that as though the Faneuil case, when it talks about the requirements, I understand the facts are different, but to show unlawful detention or restraints, says the district court, a plaintiff must demonstrate that his movements were totally restrained through quote, threats of force or by exertion of legal authority, and he quotes Faneuil for that proposition. Is that not an accurate statement of the law? And if it is, where is the threat of force or exertion of legal authority in this case? Well, the fact that he was being escorted by an armed security guard, who's essentially acting as not just the employer, but as a position of authority, enforcing the safety of the building and having that authority to command him to come with him. I mean, even if he said, well, I quit, he's still being detained. He can still be escorted out potentially by the security guard. So I think that's very different. And yes, you accurately stated the law and I believe that Mr. Martinez's case falls within that standard. So let's suppose we agree that there's a detention against his will. You also have to show the unlawfulness of the restraint, right? Yes. So what was unlawful about what they did? There is a specific policy that governs drug testing that the, what's not followed here. You know, there's different reasons that somebody can be drug tested. You can have cause for the drug test. If you are giving suspicion that you are under the influence, they can specifically point to you, send you for a drug test. That is not the case here. Alternatively, it can be a random drug test. Even if I should point that they violated policy, how does that make his restraint unlawful? They did not have the authority to do it in this manner, that it is, you know, again, a specific way of treating their employees. I mean, this is a collective bargaining agreement, not just a company policy. So it's, you know, contrary to the contract. An arguable violation of a contract, which doesn't seem like that's unlawful. There's a difference. Yeah, that's true, yes. All right, your time is expired. We can give you some time on rebuttal. I'll ask my colleagues if they have any further questions at this time.  All right, we'll give you a couple of minutes on rebuttal. Let's hear from counsel for Constellus Triple Canopy, Ms. Cornell. Yes, good morning, your honors. May it please the court. My name is Susan Cornell, and I'm here representing Mr. Martinez's employers, Constellus and Triple Canopy. We are asking the court, as you might imagine, to affirm the lower court's decision dismissing the amended complaint with prejudice. The appellee has raised three grounds of appeal, that he stated a plausible claim for hostile work environment, that he stated a plausible claim for false imprisonment, and that the dismissal with prejudice was improper. And I'll address each in turn. Mr. Martinez has asserted a hostile work environment based on his appearance or disability. But to make out, as you've noted, a hostile work environment claim, there must be discriminatory intimidation, ridicule, or insult that is severe or pervasive so as to alter the terms and conditions of employment and create an abusive working environment. The severity and pervasiveness are supposed to be determined by the totality of the circumstances. Those circumstances include the frequency of the alleged discriminatory conduct, their severity, whether those instances were physically threatening or humiliating, and whether they unreasonably interfere with the work performance. The standard is an objective one, and it's a standard that this court has characterized at time as requiring extreme conduct. Here, essentially, Mr. Martinez relies on frequency alone. None of the specific comments alleged could be fairly characterized as insulting or intimidating or humiliating. He also alleges the circumstance that this was a work rule requiring that his beard be trimmed so that the hairs, quote, not protrude more than a quarter inch from his face. There is simply no discriminatory insult and injury. Even if we assume that Mr. Martinez is alleging- Isn't someone who, for medical reasons, appeared in as being harassed on a daily basis about that, even though they are complying with the medical exemption, they're complying with the work rule every day for a five-year period? Isn't that... Would you want to work under those conditions? Wouldn't that be psychologically debilitating? Your Honor, we do not contend that there are no set of circumstances under which daily appearance-based or disability waiver-based comments could create a hostile work environment. I certainly agree that they could. I think that the allegations, and I think the record reflects, that the allegations identified in this complaint do not support that. The allegations were asking about the length and shape of the beard. There are very few specifics in here. And my point is that if those happen, on average, every other day, that what we have is a beard that grows and that it can't be a one-and-done conversation if the obligation is to demonstrate or to confirm compliance with a work rule where that compliance will always be ongoing. Counsel, that's not reading the complaint in the light most favorable to the plaintiff, though. That's not the complaint describes the interactions and the conversations about the beard, is it? I think the complaint describes two specific conversations with my client, one in which he compares his face to another person, and we don't actually know what he says, and one in which he says, I believe, that he asks for the length and shape of his beard. Those words do not suggest to me anything inherently harassing, intimidating, or insulting. I think that the characterizations in the complaint where the appellant and his counsel call them humiliating or call them harassing are characterizations that need not be assumed true. But I would argue that what Mr. Martinez is relying on is frequency alone. And I would suggest that a long list of trivial incidents is no more a hostile work environment than a pile of feathers is a crushing weight, as this court said in the Baird decision. With respect to the false imprisonment claim, this claim was- Can I just ask you before you go on to that claim? Yes. Ms. Farr also indicates that the hostile work environment claim itself is supported by the additional facts related to what she says was an unlawful detention. Do you have any response to that? In other words, you're not only looking, she says, you said totality of the circumstances, and she has added to the circumstances the incident concerning your analysis. Is that a reasonable thing to do? And what is your response to that? Thank you for raising that. I appreciate that opportunity to increase, to add to my argument. We don't believe that that drug test constitutes any incident of harassment at all, much less one that could contribute to a hostile work environment. It is a drug test that occurs in workplaces. It was not particularly severe. It's not frequent, it only happened one time. It was not objectively humiliating, although Mr. Martinez says it was subjectively humiliating. It was not threatening. And I would argue it's a perfect example of an ordinary tribulation of a workplace. He actually identifies having been approached in private when no one else was around and being asked to go with Major Rouse. And although he walked through a public location, I don't think we can assume that that was objectively humiliating. So I would argue that that incident alone would not constitute a single institute of harassment, nor would it contribute to an ongoing pattern of harassment. All right. So the standing alone then in looking at the unlawful detention claim, what's your argument about that? Well, Your Honor, I think you all have keyed on the key case, which is the FANEL or FANEL case, where the court confirmed that in order to have a false imprisonment claim, you needed to have an unlawful detention without consent. And here, Mr. Martinez was not restrained of movement. His restraint was not total at all. He walked on his own volition down through an elevator at a public building. He walked away from Major Rouse and returned. He may have been concerned about the circumstances of what was going on, but he did not express any unwillingness to go. He did not refuse to get in the car. He did not attempt to leave the car. He, in fact, got in the car a second time for the return trip. There's no question that it was, in essence, voluntary, even if he thought that his... Could he be responding to a show of authority by a supervisor? I mean, it would have been insubordinate for him to have not gone with his supervisor when his supervisor says, give me your gun and you're coming with me. I think that it is fair to assume from the facts alleged in the complaint that Mr. Martinez believed his job was in jeopardy or he would be subject to discipline if he did not comply. I think that is absolutely fair to assume from the allegations in the complaint. I do not think that that is sufficient to rise to the level of a false imprisonment under the common law of the District of Columbia. He needed to be subject to the threat of force and to actual force or the threat of force. And I think the complaint allegations make clear that he was not. I think that Ms. Farr's argument today confirms that he was not. She distinguished it from the Fanil case by saying that Ms. Fanil was concerned about her loss of job but not her loss of career. But here, there's no distinction in the allegations of the complaint. Mr. Martinez may have thought he had to go to save his job, but that's essentially identical to the case in Fanil. I'll also point out- I'm sorry, can I just ask you about the restraint against his will, though, piece? I mean, do you deny that this was against his will that he was asked to go or that he went? I would say from the allegations in the complaint, it is safe to assume he did not want to go but that he did voluntarily in any event. Just like if your supervisor tells you to do something you don't wanna do, you can't claim it's involuntary when you do it. It's not subject to the threat of force or actual force because you comply. What about false pretenses? What about the fact that he apparently was told, according to the complaint, that he was going to complete a survey and that that was not true? Does that play any role in our understanding of whether or not unlawful detention occurred? I think that the Fanil case would suggest that it does not convert an otherwise consensual car ride into a non-consensual car ride. Ms. Fanil understood she was going home but the court actually addressed the fact that they made an unannounced diversion to pick someone else up. And she made the argument that she had not consented to that unannounced diversion. And the court said that was not sufficient. She made no effort to get out of the car and she made no vocal objection. Here, I would argue Mr. Martinez actually went without knowing the nature of the survey, which I don't know exactly what was said. We know that in that complaint, it's alleged that he was told it was a survey, but he went not knowing what that meant. And I would argue that makes his consent to get into that car as he walked hundreds of feet down the hallway even more consensual than that for Ms. Fanil who thought she was being only driven home. I would also say that although Ms. Farr argues that the complaint says that Major Routes was armed, I don't actually see that in the complaint itself. And we don't know from the Fanil case whether the security officers from CMP Telephone or AT&T were armed. I just don't know that we can assume that they were not. I also think that it would be a troubling extension of the false imprisonment law to assume that because one party is armed, even if we're going to accept that argument, and one party isn't armed, that that necessarily implies a threat of force. And I think that would greatly expand the law of false imprisonment to a point beyond which the law permits. Lastly, I would just argue that this was an appropriate use of a dismissal with prejudice. Mr. Martinez had already had an opportunity to amend his complaint. And so this is not an initial amendment. And also, Mr. Martinez and his counsel did not at any point before the district court ask for an opportunity to amend the complaint a second time, nor have they at any point in this proceeding identified additional facts that they could use to bolster any of their claims. At this point, I think that what they're arguing is the district court should have been obligated to offer a third bite at the apple without being asked. And I don't think that either Rule 12b-6 or Rule 41 would make such an obligation required. For all of these reasons, we ask that the decision of the lower court be affirmed in total. All right, thank you, counsel. Ms. Farr, we'll give you two minutes in rebuttal. Thank you. Just a couple of points. With regard to the employer's right to monitor the accommodation, this monitoring is visual. It would not require constant commentary by Mr. Williams to see whether or not the beard is too long. And if the beard is out of compliance, Mr. Williams could privately speak to Mr. Martinez, document the issue, re-engage in the interactive process if necessary. Asking a clean-shaven employee for input on Mr. Martinez's appearance is inappropriate. In the same way, if a employer commented on an employee's short skirt and asked another employee to take a look at that, consider that, even if there's a dress code policy, that would still be sexual harassment. This visual monitoring could have been done without the constant comments. Also, the ordinary tribulation with regard to the drug test, I mean, all they could have said is, we need you to take a drug test. There are facilities in the building that could have done that. There is no reason to go on this crazy ride through D.C. under false pretenses. Just say that you need to drug test the employee, that you have the ability to do that. And I believe that this complaint, as written with inferences in the favor of the plaintiff, stayed a claim for these allegations. But I will note that the amended complaint, the original complaint was pro se. There was only one complaint drafted by counsel. Does that really matter, though? I mean, it seems to me that the issue is not who drafted the first complaint, but the fact that the district court wrote an opinion with respect to the first complaint and said very clearly that he was concerned about the allegations that the pro se plaintiff had made. He laid out, you need to say more about these incidents, you need to comply with the requirement that they be frequent, et cetera. And to the extent that then this amended complaint comes in, drafted by an attorney, but does not, in fact, say much more, why isn't Ms. Cornell correct that this plaintiff should not be given a third bite at the apple related to this? Well, I mean, I think that this, and that's why we filed the appeal, because I think this complaint does address the court's original concerns with regard to frequency and really gets into the detail of the unlawful restraint and that element that was really not fleshed out in the original complaint. So I think that the complaint- In fairness, the unlawful restraint wasn't in the original complaint, right? I mean, it wasn't a second claim in the original complaint. True, I also mean with regard to it being an element of the hostile work environment claim that was really fleshed out in the amended complaint that wasn't in the original present complaint. All right, well, thank you, counsel. We will take the matter under advice.
judges: Wilkins, Katsas, Jackson